## WAIAHA (*w.*) *vs.* NAHOLOWAA.

### IN EQUITY.   BEFORE JUDD, J.

### SEPTEMBER, 1880.

While the *bona fide* holder of land, under a title proved to be defective, who has made improvements, may be entitled to recover their value, less rent, from the legal owner: yet, in the case at bar, it appearing that plaintiff made improvements on land to which she had no title, knowing the title was in another, the Court holds that she cannot recover the value of the improvements, notwithstanding that the real owner of the land was aware of the improvements and did not object to their being made, and in spite of the fact that similar cases frequently occur among Hawaiians.

### DECISION OF JUDD, J.

This is a bill in equity by Waiaha, widow and devisee of one Kapouhiwa, against Naholowaa, for an account of moneys expended by Kapouhiwa in improvements and buildings on a piece of land situated on Merchant street, between Richard and Alakea streets, in Honolulu.

It is alleged in the bill that Kapouhiwa lived upon this land from the year 1860, claiming title to it, and that the premises were sold by the administrator of the estate of L. Haalelea in 1865; that the administrator's deed conveyed the property to one Naholowaa, who asserted no claim to it until October, 1879, when (Pouhiwa having died in June previous) he brought an action of ejectment against the petitioner and recovered judgment for possession of the premises.

On the 30th of October, 1879, this petitioner brought a bill in equity alleging that Kapouhiwa paid the consideration in the deed, $400, and that Naholowaa's name was inserted therein as the grantee, but as trustee for Kapouhiwa, and praying for a cancellation of said deed or reconveyance of the property to the petitioner.

The Court took evidence and dismissed the bill, the allegations not being proved.

To the bill at present before the Court the defendant has demurred on the ground that it discloses no title in the petitioner to said land, either legal or equitable, and also no allegation of fraud or deception on the part of Naholowaa, etc.

. The judgments in the ejectment suit and the former equity suit are pleaded in bar.

This case is embarrassing to the Court, inasmuch as the petitioner's case is complicated by former proceedings. She allowed herself to be defaulted in the ejectment suit, whereas she might have defended it and have endeavored to prove such facts as might constitute an equitable estoppel against Naholowaa's assertion of his title, or she might have asserted her claim for the improvements.

Judge Story says, in *Bright vs. Boyd*, 1 Story, 478: "In cases where the true owner of the estate, after a recovery thereof at law from the *bona fide* possessor for a valuable consideration without notice, seeks an account in equity, as plaintiff, against such possessor for the rents and profits, it is the constant habit of Courts of Equity to allow such possessor (as defendant) to deduct therefrom the full amount of all the meliorations and improvements which he has beneficially made upon the estate, and thus to recoup them from the rents and profits." In this country the claim for mesne profits may be made at the same time with the action of ejectment, and I see no reason why the defendant, if he is a *bona fide* possessor for a valuable consideration without notice, may not recover for the improvements made on the estate beneficial to the true owner; however, if they should exceed the rents and profits during the period of occupation, it is not settled that he can recover the excess.

Or the petitioner could immediately, on the ejectment suit being filed, have invoked the aid of equity to enforce her supposed equitable title in aid of her possession and procured an injunction staying the proceedings in the suit at law until a result had been reached in the equity suit.

Story says that "If the true owner of an estate holds only an equitable title thereto and seeks the aid of a Court of Equity to enforce that title, the Court will administer that aid only upon the terms of making compensation to such *bona fide* possessor for the amount of his meliorations and improvements of the estate, beneficial to the true owner." This is upon the maxim that he who seeks equity must do equity.

The case before us is quite different; Naholowaa held the legal title and was out of the possession of the estate, and it was Kapouhiwa who made the improvements. But had she prevailed in this equity suit she would have maintained her possession of the land with the improvements upon it. ·

Chancellor Walworth, in *Putnam vs. Ritchie,* 6th Paige, 403, says: "I am not aware that the law of any civilized country has directly deprived the legal owner of property of the natural accession to the same. By the rules of the civil law, the possessor of the property of another who had erected buildings or made other improvements thereon in good faith, supposing himself to be the owner, was entitled to payment for such improvements, after deducting from the value thereof a fair compensation for the rents or use of the property during the time he occupied it. This principle of natural equity has been adopted by the law of England and of this state to a limited extent, in the action for mesne profits, where the *bona fide* possessor of property is permitted to offset, or recoup in damages, the improvements he has made upon the land, to the extent of the value of the rents and profits during his occupancy."

The Chancellor says further, "I have not, however, been able to find any case either in this country or in England, wherein the Court of Chancery has assumed jurisdiction to give relief to a complainant who has made improvements upon the land, the legal title to which was in the defendant, where there has been neither fraud or acquiescence on the part of the latter after he had knowledge of his legal rights.

I do not, therefore, feel myself authorized to introduce a new

18

principle into the law of this Court without the sanction of the Legislature, which principle on its application to future cases might be productive of more injury than benefit."

In 2 Story Eq. Jur., §799b, it is laid down as follows: "It has been sometimes thought, as a matter of justice, that Courts ought to go further, and in favor of a *bona fide* possessor of the land, whose title is defective, to decree compensation for the improvements made by him upon the land, in good faith, against the true owner, who asserts his title to it. The civil law seems to have adopted this broad doctrine where the improvements were made by a *bona fide* possessor without notice of any adverse title. * * But Courts of Equity seem not to have gone to this extent, but to have confined themselves simply to the administration of the equity, in cases where their aid has been invoked by the true owner in support of his equitable claims. They have never enforced, in a direct suit by the *bona fide* possessor, his claim to meliorations of the property, from which he has been evicted by the true owner."

Judge Story, though reluctant to be the first judge to lead to such a decison, asserted in *Bright vs. Boyd* that "the denial of all compensation to such *bona fide* purchaser in such a case where he has manifestly added to the permanent value of an estate by his meliorations and improvements, without the slightest suspicion of any infirmity in his own title, is contrary to the first principles of equity." In this Kingdom we would not hesitate to incorporate into our decisions a beneficial principle because it came from the civil law, for Section 823 of the Civil Code expressly authorizes this, and, in a state of facts strictly warranting it, we might adopt it. But by a careful examination of the petitioner's case I am unable to see that she is now in a position to expect this relief. She failed in her former suit in equity to show an equitable title to the land or that Naholowaa was Kapouhiwa's trustee. An examination of that case makes it clear that she failed to show that Kapouhiwa paid the purchase-money for the lands. Nor is she in the attitude of one in the case suggested by Judge Story.

The administrator's sale, it must be presumed, was made

publicly, and therefore known to Kapouhiwa, and the petitioner cannot say that the improvements were made *bona fide* and without knowledge or suspicion of the legal title being in Naholowaa.

There is no fraud or deceit on the part of Naholowaa suggested in the bill.

We have, then, the naked question of a person not a purchaser for a valuable consideration after the true owner has recovered possession, claiming for improvements made on the land with knowledge that the title was in another. Is such a person entitled to relief? The only point in her favor is the apparent acquiescence of Naholowaa in the expenditures made on his land. But it does not seem to me that a person is bound to object to improvements being made on his land, where the facts show that the occupier had knowledge of the true title, and where there is no fraud or deception alleged or shown.

The frequency with which similar cases occur among Hawaiians does not afford to my mind an argument in favor of relieving them. It is far better to found our decisions on rules of equity and justice which have been ascertained by long experience in other countries to be wise and good, than to make exceptions in cases of hardship which might make general shipwreck of the law.

I do not say that the petitioner, if allowed, would succeed in proving an equitable title to the land, and that the improvements were made by her husband in good faith upon it without notice of any adverse title; I mean that she is not now in a position to offer to prove it, for by the form of her case she has been obliged to allege in her bill that she failed to show this state of facts in the former case, and that she has, in fact, no title. That question is *res adjudicata,* and she cannot now adduce evidence to rebut the presumption that notice of the title being in Naholowaa was brought home to Kapouhiwa.

I am obliged to sustain the demurrer.

*Castle & Hatch,* for petitioner.

*A. S. Hartwell,* for respondent.

Honolulu, September 24th, 1880.