GOO KIM, Plaintiff in Error, *v.* R. W. HOLT, Defendant in
Error.

ERROR TO THE CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED SEPT. 21 AND 24, 1896.          DECIDED FEB. 24, 1897.

JUDD, C.J., FREAR AND WHITING, JJ.

The 3d section of the statute defining writs of error (Chap. XCV. of the
    Laws of 1892) allows a writ to correct any error appearing on the
    record.

Sections 2 and 5 of the Act to better define and declare the practice
    in trials by jury (Chap. LVI. Laws of 1892) require the charge of
    the court and requested instructions to be in writing and filed in
    the cause, and they then form or constitute a part of the "record"
    thereof.

A refused instruction and the charge of the court, when in compliance
    with the last quoted statute, are in the "record" so as to be avail-
    able on a writ of error.

If P., an owner of an interest in land, made representations to an in-
    tending purchaser, G. K. (who had information that P. had such
    interest), that his brother G. (who owned the other interest) had
    authority over the land, and that he, P., had no claim to it and
    would not claim it; and if G. K., relying upon such representations,
    changed his conduct and bought the land from G., occupied and im-
    proved it, P. is estopped to assert his title to the land against G. K.

OPINION OF THE COURT BY JUDD, C.J.

At the February term, 1896, of the Circuit Court, First Cir-
cuit, in an action of ejectment, the defendant in error obtained
a verdict against the plaintiff in error for one undivided half of
certain land situated at Niukukahi, Waikiki, Oahu, described
in Royal Patent No. 7042 (L. C. A. 1386). No bill of excep-

tions was filed by plaintiff in error. Within six months after the rendition of judgment, execution not having been fully satisfied, the defendant below obtained a writ of error, assigning as causes of error, 1st, the refusal of the Circuit Court to instruct the jury as requested by counsel for defendant in the said cause; 2d, in having charged and instructed the jury as the same were charged and instructed therein by the court; 3d, in the rendering and receiving and entering judgment upon said verdict in said cause.

The petition for the writ exhibits the instructions asked for by plaintiff in error and refused. The petition does not state that the refusals to charge as prayed for were excepted to, nor that the charge to the jury was excepted to. The original requests to charge, of the plaintiff in error, show, in the handwriting of the trial judge, that they were "refused." When the cause came before us for argument, September 21, a postponement was granted and plaintiff in error on the 22d September filed a transcript from the official stenographer's notes to the effect that plaintiff in error's attorney stated as follows, presumably before the case went to the jury, "I except to the refusal of the court to give the charges requested and also upon Your Honor's charge as given on the doctrine of estoppel. Also the instructions that you did give with regard to mesne profits and damages."

The main question of the difficulty is whether the refusal of the court to charge as requested by plaintiff in error and the charge of the court given, are now in the record, so as to be available to the plaintiff in error. Section 4 of the statute defining writs of error (Chap. XCV. of the Laws of 1892) reads: "For all purposes of this Act the record shall be deemed to include all pleadings, motions, notes or bills of exceptions, exhibits, Clerk's or Magistrate's notes of proceedings, and if so desired by the plaintiff in error, a transcript of the evidence in the case."

Section 3 of the Act prescribes that "A writ of error may be

had to correct any error appearing on the record, either of law or fact, or for any cause which might be assigned as error at common law;" * * *

The statute "to better define and declare the practice in trials by jury" (Chap. LVI., Laws of 1892) in its 5th section provides that requests for instructions in writing which the court cannot give must be marked by the judge, in the margin, "refused," and "shall be filed in the cause and shall form a part of the record therein."

So also, in section 2 the charge of the court when given orally and noted by the stenographer and thereafter transcribed or when reduced to writing by the court and read, "shall be filed in the cause and shall constitute a part of the record thereof."

Are written requests for instructions and charges of courts, when in compliance with the above requirements, a part of the record for the purpose of Error as contemplated by the 3d and 4th sections of the statute of error above quoted? Section 4 of the Error Act will admit as "record" notes of exceptions, though not reduced to a bill of exceptions signed by the court. We so held in *Woodward v. Republic, ante*, p. 416, but in that case the exception to the ruling of law claimed to be erroneous had been allowed and signed by the judge.

We intimated in *Cummings v. Iaukea, ante*, p. 1, that where misjoinder was the error claimed, the plaintiff in error could have availed himself of it in Error, though he had not raised the point in the trial court and taken exceptions.

An instructive case is *Dowling v. Baldwin*, 1 S. & R., 296. No bill of exceptions had been tendered by counsel or sealed by the judge, but an Act of the legislature required the judge, on request, to reduce his charge to writing "and file the same of record in the cause." The court held that the charge so filed was available in Error as a part of the record. Says the court, per Tilghman, C. J., "An opinion filed by positive command of law is of the body of the record and must so remain." He held that it was even more of the body of the record than a bill

of exceptions which could be withdrawn by the party who tendered it. Judge Yates, concurring, said, "the bill of exceptions would contain nothing more than is spread on the record here upon the charge of the court upon a mere question of law, and upon the whole record we are bound to judge." "It (the Act) did not intend to create new causes of error, nor to limit the exercise of discretion as it represents new trials, postponing or ordering on causes for trial, or other matters collateral to the merits of the cause; but it left the power of the Superior Court as to a review, in the same manner as if the record was brought before them on a bill of exceptions sealed at the trial."

The statute here, as in Pennsylvania, is silent as to the consequence of making the instructions refused or the charge given (when made up in the form required by the statute) a part of the record—whether it be for the purposes of exception or of error. But the instruction and the charge here are *in the record,* and, as the statute says, Sec. 3, the writ may be had to "correct any error appearing on the record whether of law or fact," it follows that any errors in either of them may be corrected on this writ.

The Indiana code requires the judge to write on the margin of each written request for instruction the words "refused and excepted to" or "given and excepted to," (Thornton, Juries and Instructions, p. 206), but all our statute requires is that the judge shall write "given" or "refused," as the case may be.

It is contended on the other hand that it would be unfair to the court to allow an instruction or a refusal to instruct or a charge of the court given or refused to be available on review, without objecting to it at the time and thus call the court's attention to it, so as to enable the court to make the correction if it so desired. It is true, as laid down by Thompson on Trials, Vol. 2, Sec. 2394, that "it is a settled rule of procedure, if the court delivers to the jury an instruction which a party conceives to be erroneous and prejudicial to him, he must, if he would save the question for review in an appellate court, call

the attention of the trial court, at the time, to the supposed error, by an explicit objection. If he fails to do this the error is deemed waived, and he cannot—unless there is a practice that all objections are deemed saved, as there is in some jurisdictions—renew it in his motion for a new trial, nor make it the subject of appellate review on a bill of exceptions." This view has always obtained in this court. 'But as we have seen the statute here has made the refused instructions and the charge a part of the "record" and therefore available on a writ of error whether excepted to or not. If this holding makes the practice of raising law questions for review easier by a writ of error than by a bill of exceptions, it may be said on the other hand, that a party defendant neglecting to present a bill of exceptions runs the risk of an execution and so a bill of exceptions is the safer method and will generally be resorted to. The legislature had passed the statute requiring requests for instructions and the charge of the court to be in writing and filed and "to constitute a part of the record," when it passed the Writ of Error Act which allowed the writ "to correct any error appearing in the record." What is already by law a part of the record need not be brought into the record by a bill of exceptions. In *Cunningham v. Wheatly*, 21 Tex. 184, the court held "that the ruling of the court appears by the record, and a bill of exceptions was therefore not necessary. The office of exceptions is to bring upon the record for revision that which would not otherwise appear; *Scott v. Cook*, 1 Oreg. 24. "It has never been considered necessary to embody matter of record in a bill of exceptions;" *De Johnson v. Sepulveda*, 5 Cal. 150. The Pennsylvania statute mentioned in *Dowling v. Baldwin, supra*, was thereafter amended by making it the duty of the court to file the points for charge and the answers of the court and also the charge, and that they should become a part of the record, though not requested to be filed. The statute, therefore, is similar to ours. The court in *Janney v. Howard*, 150 Pa. St. 339 (1892) held that under this statute "error may be assigned in respect to any part of

the charge which has been filed, with or without request, and whether excepted to in the court below or not." We therefore hold that the writ in this case is available to the plaintiff in error to raise for review the alleged erroneous instructions and charge.

Whether we are authorized to consider the transcript from the stenographer's notes (to the effect that an exception was taken), presented to this court for the first time at the argument and not sent up with the record, or whether, if admissible, it is sufficient, it not appearing that the exception was allowed by the trial court, are questions not necessary for us to decide in view of the conclusion we have arrived at, that the refused instructions and the charge of the court are parts of the record upon which assignments of error can be made. We, however, call the attention of the bar to *Rosenthal v. Ehrlicher*, 154 Pa. St. 396, *Connell v. O'Neill*, Id. 582, and *Commonwealth v. Arnold*, 161 Pa. St. 320, as instructive cases upon the question of the relation of stenographers' notes to the record.

The alleged erroneous ruling in this case was, as is claimed, the refusal to give the instructions, 2 and 3, asked for and the charge to the jury upon the same point. The position is this. An estoppel was claimed by plaintiff in error against the defendant in error to have resulted from the evidence contended to be as follows: The land in question had been inherited from their father by two brothers, George and Peter Ainoa, George being the elder. Goo Kim (plaintiff in error) when negotiating to purchase the land asked Peter Ainoa if he did not have an interest in it and Peter referred him to his brother George whom he said had authority over it, and that if Goo Kim bought he, Peter, had no right in it and would never claim any right to it. Goo Kim bought it from George by a deed purporting to convey the entire interest in the land and took possession and made improvements thereon. Peter received some of the purchase money and long after conveyed his half to R. W. Holt. Upon a suit in ejectment by Holt to recover one undivided half of the land of Goo Kim, he Goo

Kim, requested the court to charge that (2) "an estoppel *in pais* is one where there is an admission against interest, upon which the person to whom it was made has acted and an injury must result to him in case such admission is subsequently permitted to be disregarded. Such an estoppel may arise from admissions by word or by an act." (3) "If Peter represented to Goo Kim that his (Peter's) brother George could convey all of the property in question,—that he, Peter, had no authority, or no objection, and thereupon Goo Kim acted, taking the deed, paying the consideration, entering upon the land, occupying it and making improvements, then Peter and all claiming under him are estopped from setting up any title adverse to such estoppel. If Peter or his family with this knowledge took any portion of the consideration, in goods or money, it operates equally as an estoppel." These requests the court refused and instead thereof charged the law to be as follows:

"The elements necessary to constitute an estoppel by conduct are—first, there must be a representation or a concealment of material facts with intent to deceive or with such careless or culpable negligence as will amount to constructive fraud; second, the representation must have been with knowledge of the fact, that is, the true state of his own title; third, the party to whom it was made must have been ignorant of the truth of the matter, that is, the state of the title and of all means of acquiring such knowledge; fourth, it must have been made with intent that the other party should act upon it; fifth, the other party must have been induced to act upon it and will be injured by allowing a denial. Every one of those elements must be necessary to constitute an estoppel, and it is incumbent upon the defendant to establish an estoppel by a preponderance of evidence. If you believe from the evidence in this case that the defendant knew that plaintiff's grantor was entitled to one-half of the property in question although plaintiff's grantor may have concealed or misrepresented with knowledge of the facts and with intent that it should be acted

upon and was acted upon, you will find a verdict for the plaintiff."

Apparently the court made the validity of the estoppel depend upon the question whether or not Goo Kim knew when he bought the land from George, that Peter had a title to one-half of it. And as the evidence was clear that Goo Kim either knew the fact that Peter had such title or enough to put him upon inquiry, the verdict was in accordance with the instruction. If erroneous, the plaintiff in error was prejudiced by the charge and the refused instructions.

We think that under the peculiar circumstance of this case the instruction was erroneous. If the testimony establishes the fact that Peter told Goo Kim that his brother George could convey all the property in question, that he, Peter, had no authority (to sell) or no objection to George selling it, by acquiescing in the sale by George he waived his right to claim thereafter his half of the land. If as asserted he shared in the proceeds the estoppel thus created would be strengthened. Such declarations if they were made by Peter to the intending purchaser Goo Kim would naturally lead him to suppose that Peter had in some way released his claims to the land to his brother, and thus lull Goo Kim into security. Goo Kim having some knowledge of Peter's supposed right made inquiry, and, relying upon the representations made, abandoned further inquiry. Peter should be held estopped. This view is in accordance with justice and equity and is supported by authority.

Pomeroy's Equity, 2d vol., Sec. 810, says, "If the real owner (of the land) resorts to any affirmative acts or words or makes any representation, it would be in the highest degree inequitable to permit him to say that the party who had relied upon his conduct and had been misled thereby, might have ascertained the falsity of his misrepresentations."

"Where the owner or person having an interest in property represents another as the owner, or permits him to appear as such, or as having complete authority over it, he will be

estopped to deny such ownership or authority against persons who, relying on his representations or silence, have purchased or acquired interests in the property." Vol. 7, Am. & Eng. Ency. of Law, p. 18.

It is well settled that if both parties are equally cognizant of the facts and the declaration of one party produces no change in the conduct of the other there is no estoppel. *Powell v. Rodgers,* 105 Ill. 322.

In *Dickerson v. Colgrove,* 100 U. S. 578, decided in 1879, B. living in California having an interest by descent in land in Michigan wrote to his sister, his co-heir, "You can tell D. (the purchaser) from me that he need not fear anything from me; you can claim all there. This letter will be enough for him. I intended to give you and yours all my property there, and more if you need it." The court held that this letter operated as an estoppel *in pais* which precluded B. from setting up a claim to the land. Swayne, J., said: "The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden. It involves fraud and falsehood and the law abhors both." In this case the fact that the purchaser D. knew that B. had an interest in the land did not prevent the estoppel from being established. See also *Macfarlane v. Allen,* and cases cited, *ante,* p. 495.

In our case, as we have seen, it is alleged that Goo Kim with some knowledge of the title of Peter, sought confirmation of this fact from Peter and received a declaration that his brother George had complete authority to sell the land and he himself had none. The fact that Goo Kim was aware that both George and Peter inherited the land from their father furnishes no inference that he knew that Peter had not conveyed his interest to George. This is an entirely different proposition and the knowledge of the former fact does not

charge Goo Kim with knowledge of the falsity of the latter statement.

The plaintiff in error was entitled to have the jury instructed that, notwithstanding his previous knowledge of the fact that Peter had inherited an interest in the land, if Peter's representations, above set forth, had in fact changed Goo Kim's conduct and, relying upon them, he had bought the land and improved it, Peter would be estopped to set up his title against that which he had induced Goo Kim to buy.

A new trial should be granted, and it is so ordered.

*J. Q. Wood* and *A. G. M. Robertson*, for plaintiff in error.

*A. Rosa*, for defendant in error.