# HAWAIIAN COMMERCIAL AND SUGAR COMPANY *v.* KAHULUI RAILROAD COMPANY.

## EJECTMENT CASE.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED JANUARY 25, 1899.        DECIDED JUNE 6, 1899.

WHITING, J., CIRCUIT JUDGE STANLEY, AND E. P. DOLE, ESQ.,
OF THE BAR RESPECTIVELY IN PLACE OF JUDD, C.J., DISQUALI-
FIED AND FREAR, J., ABSENT.

Every case in which an equitable estoppel is set up as a defense to a
documentary title must be decided in the light of all the surround-
ing circumstances.

Defendant's grantor expended large sums of money in constructing a
railroad over land of plaintiff's grantor under a parole license from
plaintiff's grantor and in pursuance of a prior understanding en-
tered into between said parties for their mutual advantage, and for
many years afterwards the plaintiff and its grantor shared in the
benefits of said road without claiming any control over or owner-
ship in the same. Held, that the plaintiff was estopped to bring an
action of ejectment.

### OPINION OF THE COURT BY E. P. DOLE, ESQ.

This cause, jury waived, having been tried before the First
Judge of the First Judicial Circuit at the August Term, 1898,
and the court having found for the plaintiff for restitution of the
property claimed and for costs, and having denied the defendant's
motion for a new trial, it comes to this court on bill of excep-
tions.

It is an action of ejectment to recover possession of a strip of land about thirty feet wide, lying between Kahului and Wailuku, on the Island of Maui, now and for nearly twenty years last past used as a portion of the road bed of the defendant's railroad.

The railroad from Kahului to Wailuku was constructed by Mr. Thomas H. Hobron before September 2nd, 1879, and after a tract of land including the land in controversy had been leased to Mr. Claus Spreckels. On the 30th day of September, 1882, Mr. Spreckels' leasehold of the land in controversy, together with other land, became a documentary title in fee simple by Royal Patent to some twenty-four thousand acres, the consideration for said Patent, authorized by Act of the Legislature approved July 21st, 1882, being the satisfaction of certain claims of said Spreckels to Crown lands. Before the beginning of this action, to wit, February 27th 1885, Mr. Spreckels and his wife executed a deed of the land to the plaintiff corporation. The defendant corporation is Mr. Hobron's grantee.

Thus far, as the defendant admits, the plaintiff has a perfect documentary title.

The defendant sets up five defences to wit:

1. That the defendant holds the land in question under the grant of a right of way from plaintiff's predecessor in title, Claus Spreckels.

2. The plaintiff before the beginning of this action deeded the land in question to the Maui R. R. & S. S. Co. and has no title therein.

3. The plaintiff is estopped by the covenant of its predecessor in title, the Crown Land Commissioners from interrupting or hindering the defendant in the using or taking of the land in question.

4. That the road was located on the land in question in consequence of a parol license from plaintiff's predecessor to defendant's predecessor, which license has become irrevocable by

the expenditure of large sums of money by the defendant on the faith of the license.

5.   If the defendant's original entry on the land, was without license and without right, yet it is now operating a public railroad thereon, and the defendant having acquiesced for the period of eighteen years, cannot now maintain ejectment, but is limited to an action for damages.

Upon the undisputed facts, we are of opinion that the fourth defense is a complete answer to the plaintiff's case. "Where the facts are established it is for the court to find whether they create an estoppel." *Hayselden v. Wahineaea,* 10 Haw. 10.

We do not question the doctrine, repeatedly held by this court, that "mere acquiescence, consisting of knowledge and silence, does not work an estoppel, unless, because of special circumstances, there is a duty to speak. A person has a right to assume that others will not enter and spend money upon his land, except at their own risk, without first searching the records and making necessary inquiries, and, if they neglect to pursue the ordinary means of ascertaining in whom the title lies, and suffer the consequences, it is their own folly. They cannot blindly take risks and then cast the loss, if any, upon the owner who has done nothing to encourage them in their action." *Nahaolelua v. Kaaahu,* 10 Haw. 18; *Kela v. Pahuilima,* 5 Haw. 525; *Waiaha v. Naholowaa,* 6 Haw. 271.

But we think that the undisputed facts of this case bring it within the rule stated by Lord Denman and frequently approved by this court, that "where one by his words or conduct wilfully causes another to believe in the existence of a certain state of things and induces him to act on that belief, so as to alter his previous condition, the former is concluded from averring against the latter a different state of things as existing at the same time." *Hayselden v. Wahineaea,* 10 Haw. 10; *Kamohai v. Kahele,* 3 Haw. 550.   As Pomeroy puts it (Pomeroy's Equity, Vol. 2, Sec. 10, approved in *Goo Kim v. Holt,* 10 Haw. 660.) "If the real owner of the land resorts to any affirmative acts or words

or makes any representation it would be in the highest degree inequitable to permit him to say that the party who had relied upon his conduct and had been misled thereby might have as-certained the falsity of his misrepresentation." Or as Swayne, J., puts it (*Dickenson v. Colgrove*, 100 U. S. 578, approved in 10 Haw. 661.) "The vital principle is that he who by his language or conduct leads another to do what he would not other-wise have done shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden."

The evidence proves affirmatively, as it seems to us, that the railroad from Kahului to Wailuku was built and maintained with Mr. Spreckels' consent and approval, in fact, under a parole license from him. The testimony of Mr. W. O. Smith (tran-script of evidence pages 60-63) and of Mr. Frank F. Porter (tran-script of evidence, pages 18-25) is in point to that effect.

Mr. Spreckels was not in the Hawaiian Islands during the con-struction of the Wailuku branch of the road, but he had at that time a general manager, Mr. Hermann Schussler, in charge of his Maui property, who does not appear to have made any ob-jection to Mr. Hobron's enterprise.

Mr. Schussler had a full power of attorney (Exhibit "P") dated October 28th, 1878. It authorized him, among other things, "to enter into and take possession of all property, real, personal and mixed now owned and possessed by me (Mr. Spreck-els) or which I may hereafter own or acquire, situate, lying and being on the island of Maui in the Hawaiian Kingdom and to lease, let and demise the same on such terms as to him shall seem fit * * * to ask, demand, sue for, recover, have and receive all sums of money due or to become due to me from any person or person on the said island of Maui arising from or founded on any matter, cause or thing whatsoever; to institute, maintain and prosecute any action at law or in equity that may be or be-come necessary for the protection and maintenance of any of my rights on said island of Maui and to appear for me and defend    .

any suit or action at law or in equity that may be brought against me in any of the courts of the Hawaiian Kingdom and finally * * * * to do and cause to be done such works, building, and constructions on the said island of Maui as he shall see fit and in such manner and on such terms as he shall deem best, making such contracts therefore as he deems best. Giving and granting unto my said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises as fully to all intents and purposes as I might or could do if personally present. Hereby ratifying and confirming all that my said attorney shall lawfully do or cause to be done by virtue hereof."

It is presumed, until the contrary is proved, that every man performs all his official and social duties. The like presumption is also drawn from the usual course of men's private offices and business where the primary evidence of the fact is wanted. 1 Greenleaf on Evidence Section 40. It is likewise a presumption, based on the experience of human conduct in the course of trade, that men are usually vigilant in guarding their property and prompt in asserting their rights and diligent in claiming and collecting their dues. 1 Greenleaf on Evidence, Section 38.

It may be presumed, therefore, certainly if corroborated by other evidence and contradicted by none, that Mr. Schussler made no objection to the building of the Wailuku branch of the Kahului railroad and brought no claims in regard to the same, not because he was remiss in the discharge of his duties, but because he knew that the railroad was being constructed in accordance with an understanding between Mr. Spreckels and Mr. Hobron.

September 22d, 1879, about the time that the Wailuku branch was finished, Mr. F. F. Porter became general manager of the Spreckelsville Plantation, as he expressed it, "of everything there," and Mr. Spreckels and the directors of his company came shortly afterward. Mr. Porter

testified that he was instructed by Mr. Spreckels to let Captain Hobron run . his road anywhere on the company's land and use his own discretion and to hurry him up with the railroad to Spreckelsville; that Mr. Spreckels was there in May or June 1880; that the Kahului Railroad Company was then operating its cars on the track from Kahului harbor to Wailuku; that it was there when he, Porter, took possession in 1879; that he, Porter, never questioned their right; that Mr. Spreckels saw the track there extending to Wailuku and the cars running on the track; that he, Porter, was manager thirty-eight months, during which Mr. Spreckels was there perhaps four or five times; that at all such times the Kahului R. R. Company was operating its cars on the track from Kahului harbor to Wailuku; that at no time while Mr. Spreckels was there did he make any objections to the use of the track or make any claims against the Kahului Railroad Company in reference to that track from the wharf at Kahului to Wailuku; that the Spreckelsville drinking water was brought on the railroad from Wailuku in tanks; that the directors had many a free ride on it and Mr. Spreckels traveled on it to Wailuku very often; that the witness himself, the Spreckelsville manager, used it free; and that during all of the time when the San Francisco capitalists, the president and directors of plaintiff corporation, were there the witness did not directly or indirectly hear any complaint against the use of this strip of land owned by Mr. Spreckels and the Hawaiian Commercial and Sugar Company by the Kahului Railroad Company.

Almost immediately after the completion of the Wailuku branch (September 29th 1879,) Mr. Spreckels granted to Mr. Hobron rights of way for further railroad construction. It is claimed by the defendant that this deed (Exhibit 1) included the road already constructed. We do not so find; but it is a circumstance, in connection with other circumstances, tending to prove acquiescence in what Mr. Hobron had already done.

It is further in evidence that no claim of trespass or of title was made against the defendant or its predecessor until about

eighteen years after the railroad in question was constructed, not until the relations of the parties became antagonistic although, during all of that time, the defendant or its grantor was doing business as a common carrier under the eyes of the plaintiff's officers and managers, and the track was substantially relaid twice without objection, and the last time as late as 1894.

Every case in which an equitable estoppel is set up as a defense to a documentary title must be decided in the light of all the surrounding circumstances.

The evidence, largely circumstantial but uncontradicted, satisfies us that the defendant's grantor expended large sums of money in constructing a railroad over land of plaintiff's grantor under a parole license from plaintiff's grantor and in pursuance of a prior understanding entered into between said parties for their mutual advantage, and that for many years afterwards the plaintiff and his grantor shared in the benefit of said road without claiming any control over or ownership in the same or any interest in the land occupied by it.    The evidence brings the case directly within the "vital principle that he who by his language or conduct leads another to do what he otherwise would not have done shall not subject such person to loss or injury by disappointing the expectations upon which he acted."

On this ground the exceptions are sustained.

*A. S. Hartwell, W. R. Castle and P. L. Weaver*, for plaintiff.

*Kinney, Ballou & McClanahan*, for defendant.