J. ALFRED MAGOON, TRUSTEE IN BANKRUPTCY OF THE ESTATE OF MARY H. ATCHERLEY, *v.* KAPIOLANI ESTATE, LIMITED, AND J. F. BROWN.

EXCEPTIONS FROM CIRCUIT COURT, SECOND CIRCUIT.

HON. S. B. KINGSBURY, JUDGE.

ARGUED MARCH 8, 1915.                    DECIDED MARCH 25, 1915.

ROBERTSON, C.J., QUARLES, J., AND CIRCUIT JUDGE WHITNEY IN PLACE OF WATSON, J., DISQUALIFIED.

WILLS—*construction—intent of testator—Hawaiian language.*

It is the duty of the court to, if possible, find a meaning for and give effect to the language used to express the intention of a testator, and in construing a will written in the Hawaiian language the court will take a broad view. The Hawaiian word "no," meaning "to" or "for" has always been regarded as operative and sufficient to constitute a devise or bequest when used in a will.

SAME—*construction of general and specific provisions.*

Where a specific devise conflicts with a general devise it is generally a reasonable presumption that the testator intended that the specific provision would operate upon the property named in it and the general provision upon other property.

Magoon v. Kapiolani Estate, 22 Haw. 510.

SAME—*dower—testamentary provision in lieu of—evidence of acceptance by widow.*

Under a statute requiring a widow to make her election to take under a testamentary provision in the will of her husband or be endowed of his lands, the widow will be presumed to have taken her dower unless there is evidence of some unequivocal act on her part showing an election to accept the testamentary provision instead.

SAME—*lapsed devise—presumption against intestacy.*

Where a specific devise lapsed, held, in order to effectuate the apparent intention of the testator, that title to the property passed to other devisees under a general provision in their favor. The presumption against partial intestacy is a strong one.

DEEDS—*construction.*

A deed purporting to convey all the right, title and interest of the grantor in and to the estate of his deceased father will pass his title to the property derived by him out of the estate of his father who died testate though the grantor erroneously described himself as an "heir at law."

EJECTMENT—*legal and equitable titles—equitable estoppels.*

Subject to the exception by which equitable estoppels are admitted the rule is that actions of ejectment deal only with legal titles to land.

OPINION OF THE COURT BY ROBERTSON, C. J.

This is an action of ejectment to recover the land known as Onoulimaloo, on the Island of Molokai, to which the plaintiff claims title in fee simple. The defendant, Kapiolani Estate, Limited, also claims ownership in fee simple, the defendant Brown being its lessee. The case was tried jury waived and judgment was entered in the circuit court for the defendants. The plaintiff brings exceptions. The title relied on by the plaintiff is as follows: A land commission award and patent thereon to one Kinimaka; the will of Kinimaka by which, it is contended, the title passed to the testator's children Kaniu (for life), D. Leleo (for life) and Moses Kapaakea (remainder) in fee simple; deed from Moses Kapaakea Kinimaka to Mary H. Atcherley; and the bankruptcy of Mary H. Atcherley and the appointment of the plaintiff as trustee. On behalf of the Kapiolani Estate, Limited, it is contended that the title to this land

passed by the will of Kinimaka to the testator's widow, Pai, or went to the testator's children as intestate property by descent; that upon admitted facts of its possession and that of its predecessors in interest continuously since the year 1866 title by adverse possession has been acquired; that no title passed to Mary H. Atcherley by the deed of Moses Kapaakea Kinimaka; and that if it cannot otherwise defeat the plaintiff's claim it is entitled to rely on a certain equitable defense, the particulars of which were in evidence, but which was not passed upon by the circuit court. The court below held that title to the land in dispute did not pass to Mary H. Atcherley by the deed in question. We are of the opinion that the judgment cannot be sustained on the ground upon which the circuit court rested it, and that there must be a reversal.

As to the will of Kinimaka. This will was admitted to probate in 1857. It was written in the Hawaiian language and the translation of so much of it as is necessary to a proper understanding of the case is as follows:

"I therefore make my will, while yet in good health, devising and bequeathing all my property, real and personal, to my heirs, my own children, so that they will have no trouble hereafter, and in order that no one else can hinder, having no rightful claim to the rights and property of my own children.

"Kaniu is to be my first heir, and at her death it descends to D. Leleo, after his death it descends to Moses Kapaakea, these are my heirs:

"This is the amount of my property.

1 Ahupuaa Kalahiki   South Kona   Hawaii
1    "      Onouli Maloo for (Pai that land on Molokai
1    "      Maihi for (D. Leleo   North Kona   Hawaii
1 Purchased Land Pahoehoe (M. Kapaakea North Kona Hawaii
1 Kuleana Kalahiki Eleiwa            South Kona Hawaii
1 Houselot Nalino at Holualoa        "    .  "      "
1    "      Honuakaha   Honolulu     Oahu
1 Kuleana Kauleo adjoining Maemae    Oahu
1    "      Umauma    "    Kapena    Oahu
1    "      Kukui Kaaleo             Oahu

Personal Property.

R. Pai 2 horses Onouli Maloo  Molokai
D. Leleo 2 horses Maihi  North Kona  Hawaii
M. Kapaakea 2 horses Pahoehoe  North Kona  Hawaii."

Then continues the list of items of personal property including cattle, horses, household articles, etc., not specifically designated as given to a particular person, and the will concludes with the statement "This is the amount of my property that I give by will as above to my heirs."

The contention advanced on behalf of the plaintiff that the language used by the testator in connection with the ahupuaa of Onoulimaloo was too vague to constitute a devise to Pai, or that, at best, it should be regarded as having been intended to give her only a life estate in the land is not sustained. It is the duty of the court to, if possible, find a meaning for and give effect to the language used to express the intention of the testator, and in construing a will written in the Hawaiian language the court will take a rather broad view. The Hawaiian word "no," meaning "to" or "for," has always been regarded as operative and sufficient to constitute a bequest or devise when used in a will. We find in this will then a general devise to the testator's three children with the remainder in fee simple to the son Moses Kapaakea, and a specific devise of the land in dispute to the widow Pai. The item in the original will reads "1 Ahupuaa Onouli Maloo no (Pai ia aina i Molokai" and we regard it as intended to be a devise of the land to Pai in fee simple in contradistinction to the life estates given to Kaniu and D. Leleo, though without words of limitation as in the devise to Moses, in and by the general clause. Furthermore, the provision for Pai must be regarded as intended as in lieu of dower and in the absence of express words and of any showing of a reason to the contrary it would be supposed that such a provision, covering only one of several pieces of land, would be for a fee simple title. The general devise to the children was subject to the specific devise to Pai and there was no obstacle to

their both having effect as evidently intended by the testator. Where a specific devise conflicts with a general devise it is generally a reasonable presumption that the testator intended that the specific provision would operate upon the property named in it and the general provision upon other property. *Paiko* v. *Boeynaems,* ante, p. 240. The next point of contention is involved in the question whether or not the widow accepted the testamentary provision in lieu of her right of dower, for if she did not it is of no moment that there was such a provision in the will. The statute of 1852 which was in force at the date of Kinimaka's death provided that "If any provision be made for a widow in the will of her husband, she shall within six months after probate of the will, make her election or be endowed of his lands; but she shall not be entitled to both" etc. Referring to that statute it was said in *Jacobs* v. *Cummins,* 4 Haw. 113, "The widow must have done something which showed that she had accepted the provisions of the will. It may have been in open court, it may have been by written renunciation of her dower, or it may have been by receiving and dealing with the property devised to her by her husband." Under such a statute a widow will be presumed to have taken her right under the law unless there is evidence of some unequivocal act on her part showing an election to take the testamentary provision instead. *O'Brien* v. *Knotts,* 165 Ind. 308, 311; *Reville* v. *Dubach,* 60 Kan. 572, 576; *Millikin* v. *Welliver,* 37 Oh. St. 460, 466; *Forester* v. *Watford,* 67 Ga. 508. The record shows that the will of Kinimaka was admitted to probate upon the petition of the testator's children acting by Robert G. Davis, their next friend. It is argued that the facts that, as shown by the record, the widow appeared in court and stated that she had no objection to make to the will and joined in a request that Mr. John Ii be appointed administrator, and, upon his declining to act, approved of the appointment of G. E. Beckwith, and later, upon the departure of Beckwith from the jurisdiction, petitioned for the appointment of R. Armstrong as administrator with the will

annexed to complete the administration of the estate, evidenced her election to take under the will. We hold that the acts referred to were not necessarily inconsistent with an intention on the part of the widow to abide by her right of dower and, as matter of law, fell short of such unequivocal conduct as would be necessary to prove an election to accept the testamentary provision. The devise to Pai must, therefore, be held to have lapsed. On behalf of the plaintiff it is contended that in this event the title to Onoulimaloo passed to the testator's children under the general clause designating them as his heirs in the manner set forth. Opposite counsel argue that there was an intestacy and that the title descended to the children as the heirs at law of their father. The question is not free from difficulty. A general residuary clause in a will is a gift of all that is left after the gifts specified or designated have been paid or satisfied, its function being to embrace everything not otherwise effectually given, including lapsed legacies and devises. No particular form of words need be used so long as the testator's intention is shown, nor is it essential that the clause be the last of the disposing provisions. The general language of the provision in favor of the children does not constitute a residuary clause in the sense that it would apply to property belonging to the testator which was not mentioned in the will. But in order to effectuate the apparent intention of the testator to dispose of all the property enumerated in the will the provision should be given the effect of a residuary clause so far as such property is concerned, and this would operate upon the devise to Pai which lapsed upon her failure to accept it. This view is supported by the presumption against partial intestacy which is a strong one. *Bertelman* v. *Kahilina,* 14 Haw. 378, 382.

As to the deed of Moses Kapaakea Kinimaka. It appears by the agreed facts that D. Leleo died in the year 1884, and Kaniu in 1901. On May 18, 1897, Moses, the remainderman, executed a deed to Mrs. Atcherley, and her heirs, of all his right, title and interest "as one of the heirs at law in and to the estate

of his father Kinimaka deceased." Counsel for the Kapiolani
Estate contends that if title to this land passed to Moses by and
under the will that this deed did not convey that title to Mrs.
Atcherley as it purports to have been executed by the grantor as
an heir at law whereas he was a devisee under the will. There is
no merit in the argument of counsel that the deed purports to con-
vey only property acquired by the grantor as an heir of his
father. The deed conveyed all the right, title and interest of the
grantor "in and to the estate of his father Kinimaka deceased,"
and the fact that the grantor described himself as "one of the
heirs at law" instead of a devisee under the will is of no import-
ance. We know of no reason why the manifest intent of the
grantor to convey all his interest in the property derived by him
out of the estate of his father should not be held to have been
carried out.

As to the defense of adverse possession. This defense would
have been available if under a proper construction of the will
of Kinimaka it should have been held that there was an intes-
tacy as to the land in dispute and that the title had vested in the
children by descent. But as the children took title under the
will the statute of limitations did not begin to run against Moses
Kapaakea or his grantee until the death of Kaniu, and as the
action was commenced within ten years after her death, the
defense fails. *Atcherley* v. *Lewers & Cooke,* 18 Haw. 625.

As to the alleged equitable defense. The final contention
of counsel for the Kapiolani Estate is that the defendant had
the right to show, and did show, as a complete defense to this
action, an equitable title to the land. The title referred to has
been the subject of controversy in previous cases in this court
involving other land. *Kapiolani Estate* v. *Atcherley,* 21 Haw.
441. The substance of this defense is this: That the chiefess
Kaniu was the owner, in so far as rights of property in land
existed or were recognized in these islands prior to the establish-
ment of the land commission, of certain lands, including Onouli-
maloo, which she devised to her foster son David Kalakaua by

oral will which was duly proved and probated in the year 1858, she having died in 1843; that the testatrix' husband Kinimaka was appointed guardian of Kalakaua who was then a minor; that it became and was the duty of Kinimaka, as such guardian, upon the organization of the land commission, to present to the commission the claim of his ward for an award of the title to this land; that Kinimaka presented a claim for title in his own name and received an award therefor upon which, as already stated, a patent was subsequently issued in his name; that Kalakaua, upon reaching his majority, in a suit in equity instituted against Kinimaka's children and his widow in 1858 averring these facts, obtained a decree directing a conveyance to be made to him of the title to the land, but that no such conveyance appears to have been made. The contention is that in the event of its being held that the plaintiff in this action has the legal title to the land in dispute the defendants are nevertheless entitled to judgment under this showing of the equitable title. Such a defense would probably be available in a jurisdiction in which the reformed procedure under the code system has been adopted, but we are of the opinion that it must be held otherwise where, as in this Territory, the distinction has been preserved between law and equity and in the administration of legal and equitable remedies. The fact that in this jurisdiction equitable estoppels may be set up by way of defense in actions at law, and have often been allowed in actions of ejectment, is urged as a reason for permitting the assertion of the equitable claim in this case. The doctrine of equitable estoppel was long ago incorporated into the law and has been constantly employed by courts of law in the decision of legal controversies. 2 Pom. Eq. Jur. (3d. ed.) Sec. 802; *Kamohai* v. *Kahele,* 3 Haw. 530; *Hayselden* v. *Wahineaea,* 10 Haw. 10; *Goo Kim* v. *Holt,* 10 Haw. 653; *Haw. C. & S. Co.* v. *Kahului R. Co.,* 12 Haw. 85. On the other hand, such a right as that to show that a deed absolute on its face was intended to be a mortgage may not be availed of in an action at law. Warvelle on Ejectment,

Sec. 262; *Okuu* v. *Kaiaikawaha,* 7 Haw. 311; *Ah Hoy* v. *Raymond,* 19 Haw. 568. But the case at bar does not present a claim of an equitable estoppel. There was no representation or conduct on the part of one which caused another, relying thereon, to change his position. The right of Kalakaua, upon reaching his majority, was the right to have from his guardian an accounting and the transfer to himself of the legal title to his land which stood in the name of his guardian. It was upon this theory that the Kapiolani Estate brought suit in 1902. *Kapiolani Estate* v. *Atcherley,* 14 Haw. 651; 21 Haw. 441. The title sought to be set up here by way of defense is in its very nature purely equitable and of the kind which, because of the refusal of the law courts to recognize such, gave rise to the equitable jurisdiction over trusts. "In the case of a trust created in lands, the estate of *cestui que trust* is purely an equitable one, of which law courts refuse to take cognizance." 1 Pom. Eq. Jur. (3d ed.) Sec. 219. "To enable a party not in possession to maintain a bill to quiet title he must have an equitable title, *one that cannot be enforced at law." Kapuakela* v. *Iaea,* 9 Haw. 555, 558. See *Kidwell* v. *Godfrey,* 14 Haw. 138. Assuming the fact to be that the Kapiolani Estate would, through a suit in equity, be entitled to have the legal title of this land conveyed to it, it is of no assistance as a defense in this case. Subject to the exception by which equitable estoppels are admitted the rule is that actions of ejectment deal only with legal titles to land.

The exceptions to the overruling of the motion for a new trial, and to the decision and judgment, which are now reversed and set aside, are sustained. A new trial is granted and the cause remanded to the circuit court.

*J. A. Magoon* and *P. L. Weaver* for plaintiff.

*J. Lightfoot* for Kapiolani Estate, Limited.